# ·Thiel College *versus* The County of· Mercer.

An incorporated college founded and endowed by the gifts of .citizens, managed by a board of trustees appointed by the synod of the Evangelical Lutheran Church, whose chief object is to furnish .education to the youth of· both sexes at as reasonable a rate as possible, but not granting absolutely free tuition (the students paying for education and boarding in part by labor or fees), into which neither the public nor any class thereof has any absolute right of admission, is not·such an institution of learning, benevolence and charity founded and endowed and maintained by public or private charity, as to render its corporate real and personal property exempt from taxation for county purposes, under the provisions of the constitution and Act of May 14th 1874.

November 27th 1882.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT·and ·GREEN, JJ.

ERROR to the Court·of Common Pleas of·*Mercer county :* Of July Term 1882, No. 133.

·Case stated,·wherein the county of Mercer was plaintiff and Thiel College of the Evangelical Lutheran Church defendant, setting forth the following facts :

Thiel College is an institution of learning incorporated by Act of April 14th 1870 and its supplement with power to take and hold real and personal estate by gift or purchase not exceeding in yearly ·income $50,000, the management of which is lodged in· a board of trustees appointed by the Pittsburgh Synod of the Evangelical Lutheran Church. ·In or about the year 1871 it acquired by gift and purchase fifty-five acres of land, in Mercer county, in one compact body, on which the corporation has erected 'certain buildings for educational purposes and dormitories, &c., and also a barn for farm purposes, and the corporation contemplates, in the immediate future, the erection of other buildings appropriate to college uses.    In connection with the farm the corporation owns a horse and two cows.

It has been and is one of the chief objects of the institution to furnish an education to the youth.of both sexes at as reasonable a rate as possible, .and for this purpose they have provided and are keeping a boarding hall, where the students are furnished with boarding at as low a figure as possible; and for the purpose·of encouraging habits of industry as well as promoting the health of the students, and for the further purpose of enabling indigent students to obtain an education, those who desire it are allowed to work certain hours in the day on the college grounds under the direction of the superintendent, and are allowed a reasonable compensation for their labor, and everything·that is so raised on the grounds is used and consumed in or for the support of the boarding hall.    Under the present and future plans of the institution, all the said fifty-five acres of land

[Thiel College v. County of Mercer.]

are necessary for the purposes contemplated, and were donated or purchased and are held for such purposes only.   The institution was originally founded and endowed by a donation of A. Louis Thiel, said endowment being by the instrument of donation and the supplement to the charter, mainly devoted to the endowment of a professorship of the German language and literature.   Subsequently other liberal donations and collections were made for the benefit of the institution, which is open to all students of both sexes without qualification or limitation other than good moral character.

The county of Mercer has caused to be levied for the year 1881, for county purposes, a tax of $12.54, assessed on said horse, two cows and thirty-seven and one-half acres of the land above mentioned.

If the court shall be of the opinion, under the facts stated, that the defendant corporation is liable for said tax, judgment to be entered for plaintiff; if not so liable, then judgment for defendant for costs, either party to have the right to sue out a writ of error.

The court entered judgment for the plaintiff on the case stated.   McDermitt, P. J., filing the following opinion :— Prima facie, all property is taxable; and its owners, claiming exemption from taxation, must affirmatively show that their property is not liable thereto.   The charter of this college enables it to receive charities, but imposes no liability on it to bestow any upon the public.   Its students pay for their tuition in labor or money; and, in their admission, it has an unlimited discretion.   It is compelled to receive no students against its own wishes.   It can convert into money the very land, it seeks exemption from the payment of taxes on, and convert the same to its own corporate use.   It may do so of all its property, save the college fund.

Legally speaking, the only endowment it has, is the Thiel fund, whatever it is; and even its object is only to establish a German professorship.   It is not admitted that any student can claim, and have his claim enforced by the courts, to receive gratuitously instruction in German.

In no just legal sense can this college be said to have been "founded, endowed or maintained by public or private charity," so as to exempt its property under the Act of 14th May 1874, from taxation : Delaware County Institute of Science v. Delaware County, 13 Norris 163.

With the exception of said Thiel bequest for the endowment of said German professorship, the property of the defendant corporation is as exclusively its own and as exclusively subject to its own control, management and disposition as is any mere individual's farm.   Tested by the case cited, the defendant is

not, under the admitted facts, "a purely public charity;" and the property described in this stated case is, therefore, liable to taxation.

The facts connected with this case are not so fully stated as they should be. It is admitted the college owns fifty-five acres of land, but it is not stated whether the necessary college buildings, now erected and those in contemplation of erection, are on the thirty-seven and one-half acres of land mentioned in this case, or whether they are on the remaining part of the land. Nor is it stated whether the remaining seventeen and one-half acres are taxed or not. I infer the buildings are on the latter piece or part of the land, and I infer, also, that it is not taxed. In a case stated, all the facts must be distinctly set forth, and nothing left to inference; what is not so stated, is deemed as not existing: Berks County *v.* Pile, 6 H. 493; Diehl *v.* Ihrie, 3 Wh. 143; Philadelphia & Reading R. R. Co. *v.* Waterman, 4 P. F. Smith 337.

Again: it should have been admitted how many acres were necessary for college buildings proper—and the necessary playgrounds for the children and students. At first, I thought of referring the case to have the facts more fully and distinctly admitted, but taking into consideration the charter, and the facts admitted, I do not see how it is possible to so fully state the facts as to make this college "a purely public charity;" and, therefore, such reference would only result in unnecessary and useless delay.

And now, 16th May 1882, judgment is entered on this stated case in favor of the plaintiff, and for the sum of twelve 54-100 dollars.

The defendant took this writ of error assigning for error the judgment for plaintiff on the case stated.

*E. S. Templeton* and *Samuel Griffith & Son*, for plaintiffs in error.—The charter and conduct of this institution bring it within the constitutional and legislative exemption from taxation, as an institution of learning and public charity. The case is ruled by Miller *v.* Porter, 3 P. F. S. 292. The fact that the students pay for a portion of their education in work, or money, does not make the institution the less a public charity. In Miller *v.* Porter, supra, the Chief Justice says: "No matter that it was not a free school; it was to bring the opportunities of education nearer home to the people, and he who cheapens popular education, or tempts a larger number into wisdom's ways, is a public benefactor, and what he does is, in the sense of the statute, a charity:" Gooch *v.* Association for Aged Females, 109 Mass. Rep. 566, 567. None of the numerous cases in Pennsylvania on the question are directly opposed to our con-

tention, and most of them support it : Witman v. Lex, 17 S. &
R. 88 ; Martin v. McCord, 5 Watts 493 ; Morrison v. Beirer, 2
W. & S. 81 ; Wright v. Linn, 9 Barr 433 ; McKissick v. Pickle,
4 Harris 140 ; Barr v. Weld, 12 Harris 84 ; City of Philadelphia
v. Bicknell, 11 Casey 123 ; Stallman's Appeal, 2 Wright 200.

*Mason* (*Zeigler & Bowser* with him), for the defendant in
error.

Mr. Justice GORDON delivered the opinion of the court,
January 2d 1883.

We must read the first section of article ninth of the con-
stitution and the Act of May 14th 1874, together, and as there
is no real conflict between them, the former may help us to
interpret the latter. The constitution exempts from taxation
only "institutions of purely public charity," and the act, "all
hospitals, universities, colleges, seminaries, academies, associa-
tions and institutions of learning, benevolence and charity, with
the grounds thereunto annexed and necessary for the occupancy
and enjoyment of the same, founded and endowed, and main-
tained by public or private charity."

The latter clause brings the act within the constitutional
limitation ; not only must the exempted institutions be of a
public character ; not only must they be founded and endowed
by public or private charity, but they must be maintained in
the same manner. But when we come to apply this constitu-
tional and statutory definition to Thiel college it will not fit at
all. From a legal standpoint it has not a single feature of a
public charity about it. It is not even alleged that a solitary
charity pupil is now within its walls, or that it is in contempla-
tion that there ever shall be a pupil of that kind. What kind
of a charity is that in which every one pays, either in money or
work, for what he gets, whether it be food or education ? And
what is the object of these charges for boarding and tuition, if
it be not to make this institution self-sustaining ? If, however,
that is its object, the intention is that it shall be supported,
"maintained," by revenues which it may derive from what it
has to sell—education, and not by private or public charity.

Concerning this corporation we may repeat what has been
so well said by the learned judge of the court below : "The
charter of this college enables it to receive charities, but imposes
no liability on it to bestow any on the public. Its students pay
for their tuition in labor or money ; and, in their admission, it
has an unlimited discretion. It is compelled to receive no
students against its own wishes. It can convert the very land,
which it seeks to exempt from taxation, into money, and apply
it to its own corporate use. It may do so with all its property,
save the college fund."

[Thiel College *v.* County of Mercer.]

From this description of the plaintiff in error, it certainly no more resembles a public charity than the Delaware county institute of science, which was established "for the purpose of the promotion and diffusion of general and scientific knowledge among the community at large, and the establishment and maintenance of a library and museum," and of which it was said, per curiam, 13 Nor. 163, that so far from being a purely public charity, it was not a public charity at all, for that, though it might permit others to use its library, nobody could call it to account for the refusal of such permission.

It is not nearly as much of a public charity as was that in Miller's Appeal, 10 W. N. C. 168, where, as was alleged, the schools were maintained principally by charitable donations, and where the parents of none of the pupils were required to pay for their tuition but such as were able and willing so to do. Moreover, judging this institution by the rule stated in Donohugh's Appeal, 5 Nor. 306, and it is utterly wanting of the character necessary to make it a public charity. In that case it was said that " the essential features of a public use are, that it is not confined to privileged individuals, but open to the indefinite public." But Thiel college is open only to a privileged class ; namely, those who pay for their tuition, and of these only such as the trustees may see fit to admit.

Furthermore, and admitting this institution to come within the provisions of the Act of 1874, we cannot see why it should complain of the officials of Mercer county. They caused to be assessed but thirty-seven out of fifty-five acres of land claimed by the corporation, and it is not pretended that the balance thus left unassessed was not entirely sufficient for the proper use and enjoyment of the college buildings properly so called. True, it is said, the design is to occupy the whole of it by a boarding-house, houses for the use of the caterer, president, professors, and as a farm. But property of this kind cannot be permitted to escape taxation, otherwise a whole village or town might, in the end, come to be exempt. The improvements above mentioned, are no more necessary for the " occupancy and enjoyment" of a college, than is a parsonage for the occupancy and enjoyment of a church. Yet in the case of the Church of Our Saviour *v.* Montgomery county, 10 W. N. C. 170, we held that a parsonage, though built on the same lot with a church, could not, under the Act of 1874, be exempted from taxation. This case is in point and rules the question before us, for the language of the act with reference to churches and their grounds, is precisely the same as that used with reference to colleges and their grounds.

The judgment is affirmed.

Sharswood, C. J., and Green, J., dissent.