## Pocono Pines Assembly, and Summer Schools of Naomi Pines v. Monroe County, Appellant.

*Taxation—Appeal from assessment—Review—Certiorari—Evidence.*

On an appeal by a county from the decision of the common pleas setting aside an assessment and valuation for tax purposes, the appellate court cannot limit itself to an inspection of the record as on certiorari, but must review the judicial action of the common pleas on the evidence disclosed by the record. While, by reason of the lower court's local knowledge of the subject of taxation, and the advantages it has in determining the credibility of witnesses, its findings of facts should have great weight with the appellate court, they are not conclusive.

*Taxation—Charities—Exemption—Constitutional law.*

Where an association or institution seeks exemption from taxation on the ground that it is a charity, it must show in fact that it is a purely public charity; it is not sufficient that the object of the association as set forth in its charter is to establish and maintain such institution. If it ceases to

do that on which it depends for exemption, the property at once becomes subject to taxation, and this is true whether the doing of that which deprives it of the character of a purely public charity, is in excess of the charter powers or not.

Where an association incorporated for a purely charitable purpose issues stock upon which no dividends can be declared, the mere fact that ownership of stock gives the shareholders the right to vote for trustees does not deprive the association from exemption from taxation which otherwise it would be entitled to; nor does the fact that the executive board of the association may grant shareholders as a special concession a reduction of admission fees to its lectures, deprive it of such exemption; nor does the right to accumulate a surplus, if in fact no attempt has been made to create a surplus.

Where an association chartered for a purely charitable purpose uses a portion of its property in business for a profit, it is liable to be taxed on such property although the profits thus made are devoted to the charitable work of the association.

An association was chartered for "the advancement of literary and scientific attainment among the people; the study of the Bible, of the science and art of teaching; and the promotion of general culture in the interest of Christianity." It issued stock, some of which it applied to the acquirement of mountain land upon which various buildings were erected, including an inn, a recitation hall, an auditorium and cottages for lodging purposes. Students were accommodated at the inn and at cottages at less than regular charges. The public were accommodated at the inn and at the rates usually charged by similar resorts in the locality. The cottages were rented to the public at reasonable rents. The profits made were applied to the general charitable work of the association. *Held*, that so much of the property of the association as was used for making a profit was liable to taxation.

Argued Jan. 10, 1905. Appeal, No. 69, Jan. T., 1905, by defendant, from order of C. P. Monroe Co., May T., 1904, No. 15, sustaining appeal from tax settlement in case of The Pocono Pines Assembly and Summer School of Naomi, Pennsylvania, v. Monroe County. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Appeal from tax settlement. Before HEYDT, P. J., specially presiding.

The facts appear by the opinion of the Superior Court.

*Error assigned* was the order of the court.

*Harvey Huffman,* with him *W. B. Eilemberger,* for appellant.

—The findings of fact in this case may be reviewed by the appellate court: Fehl's Estate, 13 Pa. Superior Ct. 601; Platt-Barber Co. v. Grove, 7 Pa. Superior Ct. 599; Hunter's App., 22 W. N. C. 361; White v. Smith, 189 Pa. 222.

The pronouncement of the object of the incorporation of this corporation as contained in its constitution will not be sufficient to entitle the property to exemption from taxation unless the actual management of the institution measures up to the constitutional plan, even admitting that to be within the requirement of the statute: American Sunday School Union v. Phila., 161 Pa. 307; Harrisburg v. Harrisburg Academy, 13 Pa. Dist. Rep. 261.

The facts are inconsistent with the legal conclusion that this corporation is exempt from taxation: Hunter's App., 22 W. N. C. 361.

*Franklin S. Edmonds*, with him *Cicero Gearhart*, for appellee.—The facts of this case bring it within the decisions of the appellate courts of this commonwealth, of which the case of Penna. Hospital v. Delaware County, 169 Pa. 305 is an example; see also Phila. v. Penna. Hospital, 154 Pa. 9; Haverford College v. Rhoads, 6 Pa. Superior Ct. 71; Philadelphia v. Women's Christian Association, 125 Pa. 572; Episcopal Academy v. Philadelphia, 150 Pa. 565; Northampton County v. Lafayette College, 128 Pa. 132.

OPINION BY RICE, P. J., October 9, 1905:

This case came before the common pleas by appeal of the present appellee from the decision of the county commissioners acting as a board of revision and appeal relative to the assessment and valuation of its property. It is brought before us by the appeal of the county from the decision of the common pleas setting aside the assessment and valuation. In such cases the appellate court cannot limit itself to an inspection of the record, as on certiorari, but must review the judicial action of the common pleas on the evidence disclosed by the record. While, by reason of its local knowledge of the subject of taxation, and the advantages it has in determining the credibility of witnesses, its findings of facts should have great weight with the appellate court, they are not conclusive: Rockhill Iron &

Coal Co. v. Fulton County, 204 Pa. 44. In this case there was no conflict of evidence, and while we agree with the learned judge below in many of his inferences from the facts testified to by the single witness who was called, we are compelled to differ with him in some of them, and also in his general conclusion of law. It seems proper, therefore, to review the evidence and state the essential facts, although in doing so we shall in many particulars merely repeat what has been very clearly and concisely stated by him.

The appellee was incorporated in 1902 as a corporation of the first class by decree of the court of common pleas of Monroe county. As to the object of the association the constitution declares : " Its object shall be the advancement of literary and scientific attainment among the people ; the study of the Bible, of the science and art of teaching ; and the promotion of general culture in the interest of Christianity."

Article IV provides that the capital stock of the association shall be $50,000, divided into 2,500 shares at $20.00 each, to be used for the purchase of land, erection of buildings, etc., in order to fulfill the object of the association ; that any person of good moral character may become a stockholder upon payment of $20.00 per share and approval of the executive board ; that no stock can be transferred upon the books of the association except by the secretary, with the approval of the executive board ; that the association has the right at all times to purchase any stock that may be presented for transfer. Subject to the direction of the board of trustees, the executive board is given very extensive power as to the care, management and control of the affairs, property and business of the association and amongst others the power when duly authorized to make loans, issue bonds and purchase real and personal property for the purposes and objects of the association ; also " to let, rent, and sell, assign or otherwise dispose of such property for the use and benefit of the assembly, whenever the executive board shall deem it to the advantage of the assembly."

The article entitled Curriculum is as follows : " In order to attain the object of the assembly as set forth in article II, there shall be a Summer School to instruct patrons in the departments of biblical, historical, philosophical, literary, linguis-

tic learning, and in the arts and sciences.   There shall also be
sufficient provision made for literary, musical, and social enter-
tainment of popular, attractive, and ennobling character."

It seems appropriate to call attention also to the article en-
titled Finances, which provides that all capital created by the
sale of stock shall be invested at the discretion of the execu-
tive board for the purposes of the assembly; that the income
from all sources shall be used in meeting the expenses, making
improvements, or "creating a surplus under the direction of
the executive board;" that the executive board shall have au-
thority to grant special concessions, such as reduction in admis-
sion fees to stockholders.

It appears by the testimony that 433 shares of stock have
been issued, which are held by eighty-one persons ; of these,
353 shares were issued upon cash subscriptions amounting to
$7,000, and eighty shares in consideration of sixty-one acres of
land conveyed to the association.   In addition to the land thus
acquired, between forty-one and forty-two acres were acquired
by gift.   The association also received gifts of money amount-
ing to $3,010, and some gifts of books, the value of which is not
stated.   The indebtedness of the association at the time of the
hearing in the court below was about $25,000.

The buildings of the association on these 103 acres of land
are a three-story building 60x36 feet with a one-half story ad-
dition 66x32 feet, with a two-story wing to the addition 45x28
feet,—called an Inn; a two-story building 30x35 feet called
Recitation Hall; a circular building about 100 feet in diameter
capable of seating 1,200 people called the Auditorium : also ten
cabins or cottages for lodging purposes and for those who de-
sire to keep house, for the smaller of which, furnished, the
association charges $60.00, and for the larger $100, for the
season.   In addition to these accommodations the associa-
tion has thirty tents which are set up on the grounds as occa-
sion requires, and for these the charges vary, the charge to
those attending the assemblies or summer schools being less
than that made to those who do not.

It is stated that what was done in 1903 fairly represents the
practical operations of the association as proposed by its man-
agers.   First a convention or training institute of the Brother-
hood of Andrew and Philip was held in the buildings of the

association, for the use of which the association made no charge; it also lodged and boarded the speakers without charge. Immediately following this was a summer school for school teachers, conducted under the supervision of the superintendent of public instruction. The salaries of the instructors and lecturers, amounting to $1,200, were paid by the state out of an appropriation made for such purposes—see Act of May 15, 1903, P. L. 502—and the association entertained them at reduced rates. Board and lodging were furnished to the teachers attending the lectures and courses of instruction at less than cost, and as to them the tuition and lectures were free. Following this was an assembly for Bible study and the training of Sunday school teachers. The ministers attending this convention were entertained by the association at a reduced rate. A small appropriation was made by the Pennsylvania Sunday School Association, which went toward the payment of the instructors employed by that association, and the appellee boarded them free of charge and paid their travelling expenses. According to the prospectus issued by the association for that year these three assemblies covered the period from July 8, to August 15; in 1903 they extended to August 26.

The premises already referred to are situated amongst other summer resorts on the Pocono Mountains. "But nowhere," says the prospectus, "can there be found a more attractive spot than Naomi Pines. Located on the very tip-top of the highest part of the Pocono Mountains, an elevation of 2,000 feet, in the midst of outstretching forests of pines, hemlocks and spruce, overlooking a beautiful mountain lake three miles in length, Naomi Pines presents exceptional attractions for an assembly offering education and recreation. Fortunately, the location of the assembly is far enough from Mt. Pocono and other well-known resorts and is new enough to develop educational and Christian characteristics peculiarly its own. No other spot on the Pocono affords such facilities for boating, bathing and fishing and such opportunities for miles of forest rambles. No other spot is so cool and possesses a more healthful and exhilarating climate." Other attractions "aside from its healthfulness as a mountain resort" are mentioned. The advantages of this place as a mountain resort are not restricted to those who attend the assemblies, schools and

lectures, but, as shown by the prospectus and the testimony, are open to all reputable and responsible persons from the time the Inn is open, which is some weeks before the educational work begins, until the Inn is closed in September. Upon this subject the prospectus reads as follows : " The Inn will be open for guests June 1, 1903, and will remain open until October 1. Large tents, furnished or unfurnished, can be obtained and table board can be had at the Inn . . . . and there are several cottages erected that can be rented." Guests who do not attend the schools and assemblies are charged the rates usually charged for similar accommodations at summer resorts in that locality. The profits accruing from the accommodation of these and other persons at the Inn and in the cottages and tents are applied to the running expenses of the whole institution, which fully equal the association's revenue from all sources.

The constitution does not, of itself, exempt any property from taxation ; it merely authorizes the legislature by general laws to exempt, inter alia, " institutions of purely public charity : " Donohugh's Appeal, 86 Pa. 306. Amongst the subjects of exemption specified in the act of 1874, are " associations or institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity." We entertain no doubt that an association or institution founded, endowed and maintained for the object set forth in the appellee's charter, and that exclusively, is an association or institution of learning within the meaning of the act. But when an association or institution seeks exemption it must be in fact a purely public charity ; it is not sufficient that the object of the association as set forth in its charter is to establish and maintain such an institution. If it ceases to be that on which it depends for exemption, the property at once becomes subject to taxation : White v. Smith, 189 Pa. 222. See also Moore v. Taylor, 147 Pa. 481 ; Philadelphia v. Jewish Hospital Association, 148 Pa. 454. And this is true whether the doing of that which deprives it of the character of a purely public charity is in excess of the charter powers or not.

It is urged against the exemption of this institution that

part of its endowment consisted of money and lands for which the donors received shares of stock of the association; that special privileges are given to the stockholders; and that the constitution contemplates the conduct of the affairs of the association in such manner as to create a surplus. But no dividends are, or by the law of the association can be, paid to the shareholders, and membership and the right to vote for trustees, which ownership of stock gives them, are not sufficient, of themselves, to deprive an institution of learning of the exemption which otherwise it would be entitled to. This was decided in Donohugh's Appeal where it appeared that the 960 shares which cost originally $40.00 each had a market value at the time the exemption was claimed of at least $25.00 each. The charter does not give the stockholders any special privileges, but provides that the executive board may grant them as a special concession a reduction of admission fees to the lectures. Without such action of the executive board the stockholders cannot claim it. It is not part of the fundamental law of the corporation. And even if the executive board granted the concession, "and if," as Justice MITCHELL said in the case cited concerning the commutation privileges of stockholders, "it were held to be an undue privilege, repugnant to the public character of the charity, the result would be, not that the charity would become less purely public, but that the privilege would be void." But we need not dwell on this feature of the case because the undisputed testimony is that the concession to the stockholders of a reduction of admission fees to lectures, if one has been formally made by the executive board, has not been taken advantage of, but has been treated as a nullity by them. Thus far no surplus has been derived from the income of the association and no attempt has been made to create one. If in the future the practical management of the affairs of the association is changed with a view to accumulating a surplus and thus enhancing the value of the stock a different question will be presented; but in the present circumstances we are of opinion that the provision of the charter relative to the discretionary power of the executive board in this matter, a power which has not been exercised, can have no controlling effect upon the question for decision.

It has been held that when an institution is free from an
element of private or corporate gain and is devoted to charity
by its act of incorporation its character as such charity is not
destroyed if to some extent it receives a revenue from the re-
cipients of its bounty: Philadelphia v. Women's Christian
Association, 125 Pa. 572; and, in the case of a college, not-
withstanding that a small portion of its annual expenses may
have been paid by tuition fees received from its students:
Northampton County v. Lafayette College, 128 Pa. 132; Ha-
verford College v. Rhoads, 6 Pa. Superior Ct. 71.   In Episco-
pal Academy v. Philadelphia, 150 Pa. 565, the doctrine of the
Women's Christian Association case was carried still · further
and it was there declared : "that an institution that is in its
nature and purposes a purely public charity does not lose its
character as such under the tax laws if it receives a revenue
from the recipients of its bounty sufficient to keep it in opera-
tion." It is difficult to reconcile this decision with the one
made when the case was before the court upon appeal from
the preliminary injunction decree—Hunter's Appeal, 22 W.
N. C. 361 ; s. c. 1 Mona. 1—or with the cases of Thiel College
v. Mercer County, 101 Pa. 530 and Miller's Appeal, 10 W. N.
C. 168.   As to the purport of the three cases last cited we quote
from the opinion of the late Justice DEAN in White v. Smith,
189 Pa. 222: " In Miller's Appeal, 10 W. N. C. 168, the school
was supported largely by tuition fees; it was held not exempt.
In Thiel College v. County of Mercer, 101 Pa. 530, the col-
lege was incorporated to furnish education to the youth of
both sexes at as reasonable rates as possible ; no profit was de-
rived by the corporation, although the students paid for their
board and tuition.   It was held that as the school was main-
tained by those who attended it, and not by voluntary contri-
butions, it was not exempt.   In Hunter's Appeal, 22 W. N. C.
361, some income was derived by the academy from property
which had been donated, but a considerable part of its reve-
nues was from tuition fees at low rates.   It was held not ex-
empt.   All these cases were based on the principles announced
in Donohugh's Appeal." Further on in his opinion, speaking
of the case last mentioned, he said : " After this lapse of time
and our observation of the litigation which has had its source
in the act of 1874, and the constitution which suggested the

act, we are averse to any departure from the law of that case ;
we therefore adhere to it now, as the settled rule of interpre-
tation of that act. It is a safer guide than the Women's
Christian Association case, which gives such prominence to the
one fact, the absence of corporate or private gain." But
while Justice DEAN criticised Philadelphia v. Women's Chris-
tian Association and Episcopal Academy v. Philadelphia, their
authority as precedents, where the essential facts are the
same, was distinctly recognized by him. We assume then
upon the authority of these cases that an institution of learn-
ing, or an institution of benevolence, that is in its nature
and purposes a purely public charity, does not lose its char-
acter as such under the tax laws, if it receives a revenue, in
the former case from tuition fees, in the latter case from sums
charged the recipients of its bounty, sufficient to keep it in
operation. It is plain, however, that this rule falls far short
of controlling the decision of this case. Its facts are essen-
tially different as we shall presently show and have already
indicated. A case more closely analogous is Pennsylvania
Hospital v. Delaware County, 169 Pa. 305, and the learned
judge below in a well-considered opinion held that the case at
bar is within the principle upon which the case cited was de-
cided. But that case also is distinguishable from the present
upon principle, for the three farms that were held to be ex-
empt were bought and were used for the purpose of a conva-
lescent hospital for insane patients,—an open-air sanitarium and
roaming ground for manageable and convalescent patients.
The court said : " The farms in actual operation as such, with
livestock, and the various crops are part of the attraction and
usefulness for curative purposes." This brought the case
within the principle as stated by Justice MITCHELL that
" property which is used directly for the purposes and in the
operation of the charity is exempt, though it may also be used
in a manner to yield some return and thereby reduce the
expense : Donohugh's Appeal, 86 Pa. 306 ; Philadelphia v.
Pennsylvania Hospital, 154 Pa. 9 ; House of Refuge v. Smith,
140 Pa. 387." The case would not be authority for the propo-
sition that if more land had been bought than was needed
for the direct purpose of the charity, in order to make a profit
from the farming of it to aid in the support of the charity,

the excess would be exempt. In American Sunday School Union v. Philadelphia, 161 Pa. 307, it appeared that the plaintiff was organized for the erection and maintenance of Sunday schools and the publication and circulation of moral and religious publications. It had no capital stock and divided no profits. It owned a large building on an important business street in which it conducted the work for which it was organized. But the whole building was not needed for the purpose, and to aid in sustaining its work it opened and conducted in this building a bookstore for profit. The profits thus made were devoted to the charitable work of the society. Upon these facts it was held that the society was not exempt from taxes on the portion of the property used for commercial purposes. Justice DEAN, who delivered the opinion of the court, said : "In all cases of this kind the tendency naturally is to an excessively liberal construction of the constitutional exemption, a construction not warranted, perhaps, by its plain restriction. The people knew what they meant, when in 1874 they said, by an overwhelming majority, 'The General Assembly may by general laws exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity.' They meant nothing else should be exempt from taxation. By no judicial rule or construction can these words be made to mean that a commercial enterprise is exempt because the whole profit of it goes into the treasury of, and it is carried on by, a purely public charity. In so far as the institution is charitable, and its revenues are derived from the contributions of the charitable, it is protected by the constitution. But if such institution sees fit to engage in trade for the purpose of increasing its revenue, or making any part of its business 'self-supporting,' the trade part of its business can be taxed, and ought to be." This case is more closely analogous to the present than any of the others. Here the association acquired land and erected buildings for the purposes for which it was incorporated, but of such area and capacity as would enable it to accommodate, not only those who came to instruct and to be instructed, but also those seeking rest and recreation alone. These pay for their accommodation at the Inn the prices usually charged at the

summer hotels in that locality, and for the cottages a reasonable rent. They are not the recipients of the appellee's bounty, as in the Women's Christian Association case; they are not students paying tuition fees, as in the Episcopal Academy case; the exaction of the sums they pay is not merely an administrative regulation incident to the conduct of the charity, as in Donohugh's Appeal; and the payments they make are not in any sense gifts to the charity. This money is paid and received in a business conducted for profit and the profit is devoted to the support of the charity. This part of the business is carried on for that purpose. True, it is conducted in connection with the management of the charity, but in its nature it is as completely unrelated thereto as if it were carried on in premises provided for the exclusive purpose of entertaining guests not connected with the educational work either as pupils, instructors or lecturers. We can see no substantial ground of distinction between this case and American Sunday School Union v. Philadelphia. The cases of Philadelphia v. Barber, 160 Pa. 123 and Wagner Free Institute v. Philadelphia, 132 Pa. 612 are pertinent, although not controlling authorities. See also Philadelphia v. Overseers of Public Schools 170 Pa. 257.

The object of this association is highly commendable and the means chosen for the support of the work are well adapted to the end; but " the claimant of exemption from taxation must show affirmative legislation in support of his claim, and his case must be clearly within it: " Philadelphia v. Barber, supra. We are unable to concur in the conclusion reached by the learned judge below that this whole place, devoted as it is, partly to educational and religious work, and partly to the wholesome purpose of a mountain resort conducted for profit, is a purely public charity within the true intent and meaning of the constitution or is exclusively an institution of learning within the intent and description of the statute. Therefore it is not wholly exempt from taxation.

The commissioners, sitting as a board of revision and appeal, held that the Auditorium was exempt and reduced the assessment accordingly. That part of their action is not before us for review. We are inclined to the opinion that there is equal reason for holding that the Recitation Hall is exempt.

This hall was a gift, and, as we understand the testimony, is used exclusively for educational purposes. Unfortunately, however, no evidence was introduced on the hearing of the appeal in the common pleas, at least none is printed in the paper-books, to show what proportion the value of this part of the property bears to the whole valuation. It is impossible, therefore, for us to reduce the valuation. Possibly the assessment shows the valuation put on this hall; if so it will be within the power of the court to make the correction.

The decree is reversed at the costs of the appellee, without prejudice to the right of the court to reduce the total valuation by deducting therefrom the valuation put upon the Recitation Hall, if the assessment book shows what that is.