## Young Men's Christian Association v. City of Easton et al.

*Charities—Taxation—Exemption—Injunction—Practice, equity.*

1. Where a Young Men's Christian Association owns a building which is used entirely for the purposes of the association, which are those of a public charity, and no profit is derived from the use of said building, the property is exempt from taxation, and the mere facts that the building contains sleeping rooms, which are used principally by members of the local association, although others having cards from associations in other places are privileged to use the same, and that a small profit is realized from the rent of the sleeping rooms, and the further fact that the association has a cafeteria, which is run for the purpose of serving meals to members of the association and their families, but which is also open to the public, and is operated at a loss, does not deprive the association of its exemption.

2. Where it appears by agreement of the parties that one of the properties mentioned in the bill is exempt from taxation, and the other property for part of the year for which the tax was levied consisted of dwelling-houses, which were rented, even though the bill prays for an injunction restraining future assessments, the bill will have to be dismissed.

Bill in equity to restrain assessment and collection of tax. C. P. Northampton Co., Feb. T., 1921, No. 3.

*E. J. & J. W. Fox* and *T. McKeen Chidsey*, for complainant.

*Newton R. Turner*, for defendants.

STEWART, P. J., Nov. 20, 1922.—The following is a summary of the facts:

The complainant is a corporation organized under the Act of May 8, 1889, P. L. 163. It was incorporated for the purpose of improving the spiritual, mental, social and physical condition of young men in the City of Easton and territory adjacent thereto, by the support and maintenance of libraries, reading-rooms, religious and social meetings, gymnasiums and such other means and service as may conduce to the accomplishment of that object according to the general rules and regulations of the Young Men's Christian Association of Pennsylvania. At the time the bill was filed the complainant owned a property in Centre Square, in the City of Easton, which was used exclusively for the purposes of the association, which were those of a public charity, and no profit was derived from the use of the said building. At the same time the complainant also owned a property at the northeast corner of Third and

3 D. & C.

Spring Garden Streets, Easton, and when the bill was filed there was in erection a building to be used for the purposes of the association. The assessment upon which the tax was levied was made in the fall of 1920, and the tax in suit was for the year 1921. When the tax was levied on the property at Third and Spring Garden Streets, it had on it dwelling-houses which were rented by the association, and the association paid the tax for the year 1921 up to the time those dwelling-houses were torn down to make way for the erection of its new building. Complainant's new building was occupied by the association for its purposes in January, 1922. The building has eighty-four sleeping-rooms, which are used only by the members of the Young Men's Christian Association, principally by members of the local association, but those having cards from associations in other cities are privileged to occupy the rooms, but the general public is not permitted to use them. The rates charged for the rooms are much lower than those charged by hotels and boarding-houses, but there is a small profit on the rent of the sleeping-rooms.

There is also a cafeteria, which is run for serving meals to the members of the association who reside in the building, to members of the association and their families. The cafeteria is also open to the public. No concessions are sold for the use of the cafeteria or the cigar-stand. It is operated entirely by the association, and any loss is suffered by the association and any profit goes to the association. During the past ten months the loss in the operation of the cafeteria was $557.55.

The association is supported by memberships, dues, annual subscriptions and an allowance from the community chest of $15,000. The community chest is a general fund made up from the contributions of the charitable people of Easton who subscribe to it, and the directors of the latter allot various sums to local charities. Including all the above sources of revenue, the association, in ten months, had a net deficit of $1600 in its operating expenses. The officers of the association are not paid any salary. It has a general secretary, who has an office in the building and receives a salary. The general secretary is not a director of the association. In addition, there are various other hired employees.

### Discussion.

The present case is the first case, so far as we are informed, that has been before the courts since the Act of July 17, 1919, P. L. 1021, and its supplement of April 9, 1921, P. L. 119, were passed. There is no branch of the law where the courts have found it harder to lay down general rules than in those cases relating to tax exemptions. In White et al. v. Smith et al., 189 Pa. 222, Mr. Justice Dean, after quoting the Act of 1874, said: "This at once imposed upon the courts a most difficult and often perplexing duty of interpretation from the facts in the case as they arose. No hard and fast rule adapted to the varying facts of the different cases could at once be confidently laid down." In Pocono Pines Assembly, etc., v. Monroe County, 29 Pa. Superior Ct. 36, President Judge Rice has pointed out the slight differences in the cases which have resulted in seemingly contradictory decisions. See, also, the many dissenting opinions in the authorities customarily relied on. It is axiomatic that article IX, section 1, of the Constitution, does not execute itself. It merely permits the legislature to exempt from taxation public property . . . and "institutions of purely public charity." The Act of July 17, 1919, P. L. 1021, repealed all prior acts that had been passed to carry out the constitutional provision, but, of course, prior decisions are helpful and must be considered. In Christian Association of the U. of Pa. v. Philadelphia et al., 75 Pa. Superior Ct. 516, Judge Trexler called attention to the fact that the Act of 1919

practically re-enacts the Act of 1874, and contained the same proviso that was declared void in Sewickley Borough v. Sholes, 118 Pa. 165, but, of course, that did not make the whole Act of 1874 void; and the Supreme Court, in the subsequent case of Philadelphia v. Barber, 160 Pa. 123, said that the proviso should be looked at and considered, as it might throw light on the intention of the legislature as to the rest of the act. We must, therefore, examine all prior decisions. Having in mind the principle that, while the Constitution was adopted by the people as an expression of their desire to exempt from taxation certain charitable institutions, yet, nevertheless, any institution that claims exemption must show that it is entitled to it. The first act that was passed was the Act of May 14, 1874, P. L. 158, and that act is the foundation for the Act of 1919. With the exception that the Act of 1919 included a few more objects, and with the exception that it contained a second proviso, it is almost the same, both in title and the body of the act, with the Act of 1874. In the Act of May 29, 1901, P. L. 319, the legislature amended the Act of 1874 by putting in, in exact words, that which is the second proviso of the Act of 1919. By the Act of March 24, 1909, P. L. 54, the legislature again amended the Act of 1874 by putting in the exact words that are found in the proviso or amendment in the Act of April 9, 1921. In the Act of June 13, 1911, P. L. 898, the legislature again amended the Act of 1874 by including a bungling lot of expressions intending to tax land not necessary for the convenient occupancy and enjoyment of the building thereon erected, and defining the meaning of "enjoyment and occupancy." It is not necessary to spend any time on this latter act, because it was repealed, but the result of our examination shows that the latest Act of 1921 does not really contain anything not contained in the prior acts up to 1911; hence, there is no legislative change, and prior decisions must apply to the present case. That this institution is a public charity, and would be exempt if it did not have sleeping-rooms and the cafeteria, was admitted on the argument. It was also contended that complainant's claim for exemption would be much stronger if the local association did not allow members from other associations outside of Easton to occupy the rooms. It does not appear upon the record, but was stated by the learned counsel for the complainant, who is also president of the association, that there was a large waiting list for resident members who desire to occupy the rooms, and that those outside of the local association, at the most, only occupy two or three out of the eighty-four rooms. No figures were given us, and, in the view that we take of the case, they will be unnecessary, for we don't think that this is a case where there should be a separation of the assessment. With respect to the cafeteria, it was contended that as the public were allowed to use the cafeteria, that fact destroyed complainant's claim for exemption, and it was also contended that as both the sleeping-rooms and the cafeteria were conducted for intended profit, that that also deprived the complainant of its exemption, *pro tanto*, as to the assessed value of the parts of the building used for those purposes. We must bear in mind that everything in the building is conducted by the association under one roof, and as part of a plan which is used in carrying on the purposes of the association. This case is not like the case of an association that occupies three or four upper floors of a building, and rents the store-rooms on the first floor, nor is it like the case of an association that conducts an entirely separate business, like that of book selling. It is admitted on the record that the sleeping-rooms are used only for members of the Young Men's Christian Association, and principally by members of the local association, and that the cafeteria was installed for the purpose, primarily, of serving meals for

3 D. & C.

those who reside in the building and who are members of the association. In other words, the entire use of the sleeping-rooms is by members of the association, and the use of the cafeteria by outsiders is only incidental. The general subject-matter was first presented to the courts in Y. M. C. A. *v.* Donohugh, 7 W. N. C. 208. That case contains a carefully prepared opinion by President Judge Allison, of Philadelphia. In it he said that the question was without precedent, but he made a precedent which has been followed by our courts ever since. It was the case of an association which used a building, except the lower floor, which was rented for stores; three small rooms for offices, and a public hall, which was rented from time to time to outsiders when not used by the association in its work. The rents amounted to $21,000 a year. He held, in the first place, that the association was a purely public charity; in the next place, that the association was not exempt for the proportion of the property which was rented to strangers. In his opinion he stated that about half of the building was used for the purposes of the association and about half rented. He exempted half of the property from taxation. The case was decided under the Act of 1874. The next case was Philadelphia *v.* Women's Christian Ass'n, 125 Pa. 572. In that case it was held: "To exempt an institution from taxation under section 1, article IX, of the Constitution, and section 1 of the Act of May 14, 1874, P. L. 158, it is an essential feature that it be a public charity, free from any element of private or corporate gain. When it is free from the latter element, and is an institution devoted to charity by its act of incorporation, its character as such charity is not destroyed if to some extent it receive a revenue from the recipients of its bounty." This association owned a building costing $70,000. It had a boarding department or home for young women, a restaurant and dining-room, a lecture-room and a free library. The women boarders paid a small sum, if able, for their board and washing. If unable, they received it free. They also paid for the restaurant, but there was no profit in the restaurant, and there was a general deficiency in the association. Judge Paxson said: "The object of the association is to improve the temporal, moral and religious welfare of young females who are obliged to earn their own support, and that, as a means to this end, it furnishes them with food and lodging, not as paupers, but for a compensation which, while it does not compensate, aids in defraying the expenses, and thus preserves the self-respect of the recipients; while to others who are unable to pay, temporary shelter is furnished free and aid extended to them in the way of procuring employment. . . . There is no element of gain in the object or operations of this association. It is a public charity, and I regard it as a short-sighted policy in the City of Philadelphia to seek to burden such an institution with taxation." He then reviewed a number of cases of schools and colleges, and, on page 581, said as follows: "In the case in hand, the stamp of charity is indelibly fixed upon the association. It appears in its charter and is developed at every stage of its proceedings. Does the mere fact that it charges a small sum to a portion of those who feed at its table and enjoy the shelter of its roof destroy its character as a purely public charity? The language of this court in the case last cited, severed from its connection, might appear to sustain this contention to some extent. The learned judge, however, was speaking of a widely different state of facts, and what he said was entirely applicable to the case he was discussing. This whole subject was carefully considered in Donohugh's Appeal, 86 Pa. 306. That was the case of the Philadelphia Library, an institution maintained by the annual contributions of members, from the income derived from such property as has been given

to it, and from fees paid for the use of the books. The test in that case was the object of the corporation. That was found to be the general public good and not private gain." In conclusion, he said: "It is an essential feature of an institution claiming exemption from taxation under the Constitution and the Act of 1874 that it shall be a public charity, free from any element of private or corporate gain. If it is free from the latter element; if it is an institution devoted to charity by the very fundamental law of its existence, is its character as such destroyed if to some extent its revenues are derived from the recipients of its bounty? As an illustration: Suppose an organization is formed for the sole purpose of supplying cheap fuel to the poor; that such object appears by its charter, and that, in pursuance thereof, it furnishes coal to the poor at one-half the rates usually charged therefor, and that the balance of the price thereof, or the loss occasioned by such sales,. together with all the other expenses of the association, are made up by contributions from the members and the general public; that all the time and labor of the members are given gratuitously, can any one doubt that such institution would be a purely public charity, 'founded, endowed and maintained by public or private charity?' This association is precisely such an institution. It has no element of gain connected with it. The charge for meals and lodgings is not more than one-half of what would be charged for similar accommodations elsewhere. It may, therefore, be said to be maintained by charity; it could never have been organized except by charity; it could not be continued for a year without charity. It may be these views conflict slightly with what has been said in some of the cases referred to; it does not conflict, however, with the points decided in either of them; while they are believed to be in entire harmony with Donohugh's Appeal, 86 Pa. 306." Donohugh's Appeal, 86 Pa. 306, was the case of a public library. It was contended in that case that because the members paid to take out the books, and because the library received a substantial sum from these fees, it was not exempt. Judge Mitchell, who wrote the opinion, which was afterwards adopted by the Supreme Court, said: "A step farther brings us to the third and last privilege, that of members who, instead of paying the hire of each book from time to time as they take it out, pay a single annual sum as an equivalent. The principle of commutation is familiar. It is as old as the history of tithings in England, as universal as the conveniences and the necessities of business everywhere. The law prohibits a common carrier from discriminating between persons; it requires him to carry all men the same journey for the same price; yet there is probably no railroad in the country that does not issue season or mileage tickets, or commutation in some other form or other, to its local customers, and this has never been held to impair or infringe upon its public character as a common carrier. Such regulations, within reasonable limits, are mere administrative details, necessary in all but the most insignificant business, and not in any way affecting the general character of the institution." In Northampton County v. Lafayette College, 128 Pa. 132, it was held: "Buildings owned by an incorporated college, located on the college grounds and occupied as residences by persons employed in carrying on the proper work of the institution, such as instructors, the secretary of the president, or a gardener having charge of the property, are embraced in the exemption from taxation granted to colleges by the Act of May 14, 1874, P. L. 158. . . . Such an institution, if founded, endowed and substantially maintained by charity, is a purely public charity, and as such within the protection of the Act of 1874, granting exemption from taxation, notwithstanding that a small portion of its annual expenses may be paid by

3 D. & C.

tuition fees received from its students. Thiel College v. Mercer County, 101 Pa. 530, and Institute of Science v. Delaware County, 94 Pa. 163, distinguished." Mr. Justice Williams, in delivering the opinion, shows just how much money was received from various sources for the support of the college, and said: "As to its charitable character, it is clear that it was founded and endowed by charity. This is not questioned, and upon the exhibit made in the case stated, it is equally clear that it is substantially maintained by charity. That a small fraction of its annual cost may be paid by tuition fees is not enough to deprive an institution, substantially maintained by charity, of the protection of the Act of 1874. The true question is, on what does this public institution depend for its maintenance? The answer in this case is, almost wholly on the income from its endowments which were a charity, and on the free gifts of its friends." In House of Refuge v. Smith et al., 140 Pa. 387, the managers purchased 384 acres of land, which was cultivated by the inmates and some of the products were sold to defray the expenses of the institution. It was held that the land was exempt. That case simply followed Northampton County v. Lafayette College, 128 Pa. 132, and the same may be said of Episcopal Academy v. Philadelphia et al., 150 Pa. 565. In American S. S. Union v. Philadelphia et al., 161 Pa. 307, it appeared that the complainant owned a large building, wherein it conducted a book store for profit. The profits thus made were devoted to the charity work of the society. Mr. Justice Dean, in reviewing the cases which were referred to above, said: "In neither of the cases cited was the business outside of, or disassociated from, the charity. In each case it was so blended with the 'purely public charity' that on its facts it was difficult to draw a distinction, and the exemption claimed was sustained by this court on the special facts. But we hold in this case that carrying on a book store, or any business for profits, subjects such business to taxation, even although the whole profit therefrom goes to the principal institution for purposes of 'purely public charity.' " That is to say, in the latter case, the business of carrying on a book store was a distinct business. In the cases referred to, while there was a business, it was subordinate to and blended with the work of a "purely public charity," and in that respect it is similar to the case in hand. In Penna. Hospital v. Delaware County et al., 169 Pa. 305, certain farms were bought, and were used in connection with the institution, which was a hospital for the sick and those mentally affected, as playgrounds and roaming grounds for the inmates. It was shown that produce was sold from the farms. The farms were not connected with the hospital. It was held, however, that they were a part of the plant, but the Supreme Court held that none of these facts required it to pay taxes, and that it was exempt. In White et al. v. Smith et al., 189 Pa. 222, we find the following facts: "A Roman Catholic church owned a lot, on which was erected a church, a convent and a school building. The legal title was in the bishop in trust for the congregation. The school building was erected by voluntary contributions and maintained by such contributions. It was open to all, free of charge, without regard to creed, color, race or condition. No revenue was derived from it. The teachers of the school lived in the convent building, which was occupied exclusively by them. They were paid a small salary in addition to the privilege of residence in the convent building. Both buildings, when projected, designed and erected, were intended for the use to which they were put. Held, that the convent building was exempt from taxation." Mr. Justice Dean, speaking for the court, expressly approves the principle of Donohugh's Appeal, 86 Pa. 306, and goes over all the cases, and expressly refers to the Y. W. C. A. case, *supra*, and, speaking for himself,

said: "It was held to be a purely public charity, and exempt mainly on the ground that it was free from any taint of corporate or private gain. I doubt if the decision can be sustained on this ground alone; but the facts that board and lodging were furnished by the corporation at less than actual cost to a worthy class, and to some of them free, and that the deficiency was made up by voluntary contributions, would perhaps warrant the conclusion that the association was purely a charity." What he there said applies entirely to the present case, because it is a fact that there is an annual deficiency in the present case which must be made up by voluntary contributions. That element was introduced by the amendment to complainant's bill, wherein it is alleged that the annual deficiency is between $15,000 and $20,000, which amount will be contributed by the residents of the City of Easton that are charitably inclined, and who give to the association as a matter of charity. The testimony of Mr. Brasefield did not show that the deficiency was that large, but he did testify that there would be a general deficit of $1600. In the last case, Methodist Episcopal Church v. Philadelphia, 266 Pa. 405, it appeared that the board owned a property assessed at $275,000. One-half of the building was used for the work of the board, and the other half of the building was rented out for different businesses. The court decreed that half of the property should be subject to tax and half exempt. Mr. Justice Moschzisker first held that it was a public charity, approving what was said in Donohugh's Appeal, 86 Pa. 306; Fire Ins. Patrol v. Boyd, 120 Pa. 624, and White v. Smith, 189 Pa. 222, and then approved the equitable division of the property as was first laid down in Y. M. C. A. v. Donohugh, 7 W. N. C. 208. The question has also been before the Superior Court. In Pittsburgh v. Presbyterian Church, 10 Pa. Superior Ct. 302, it was held: "A janitor's residence, built by a church upon the church lot and separated from the church building, is not exempt from municipal taxation. A janitor may be a necessity for a church, but it does not follow that a residence for his comfort and convenience is." In Pocono Pines Assembly, etc., v. Monroe County, 29 Pa. Superior Ct. 36, where the charter indicated that it was to be a public charity, but where the practice of the association showed that it was run more as a summer boarding-place, with literary and religious tendencies, but at a profit, even though the profit was applied to the general purposes of the association, it was held that it was not a public charity. President Judge Rice did review all the decisions very elaborately, and he shows how hard it is to reconcile them, but, after all, that case is only authority for the special facts of the case itself, which were exceptional in character. In Mercersburg College v. Poffenberger, 36 Pa. Superior Ct. 100, there is a very elaborate review of the cases, both by Judge Endlich and by President Judge Rice. The last Superior Court case is U. of P. Christian Ass'n v. Philadelphia et al., 75 Pa. Superior Ct. 516, which is practically on all-fours with American S. S. Union v. Philadelphia et al., 161 Pa. 307. In this case the lower court found that portions of the property should be taxed, to wit, "the dining-room, the rooms occupied by the superintendent at a monthly rental, the rooms let to various students, the unused portion of the stable and the portion used for storage purposes, and the lawn used as the driveway for the stable." The Superior Court doubted the correctness of that view, but held that a stable and a driveway were taxable, and affirmed the lower court for the reason that "if any portion of the premises is taxable, the bill in equity must be dismissed," relying on American S. S. Union v. Philadelphia et al., 161 Pa. 307. That brings us to the last question we need discuss. On the trial, the learned solicitor for the City of Easton agreed that no taxes could be assessed against the property in Centre Square, and the

3 D. & C.

learned counsel for complainant agreed that, having paid the taxes up to the time the buildings on the property at the northeast corner of Third and Spring Garden Streets were torn down, the association would be liable for the balance of the year. These admissions by the learned counsel practically remove all disputed points in the case. The city will not press the collection on the Centre Square property, and complainant admits its liability for the only year in dispute. While it may be true that the City of Easton will seek to collect taxes for the subsequent year of 1922, and while the bill does pray for relief from the assessment of 1921, and from any assessment that may be made in the future, yet we feel that a perpetual injunction ought not to issue, for the reason that all the conditions in the case have been provided for. To a certain extent, therefore, this discussion is a mere academic one, but we have studied the cases and give our views at length because the matter was so carefully argued by counsel on both sides, and because it is a public question. On the question of costs, as each side seems to have won a point, we will divide them.

And now, Nov. 20, 1922, this cause came on to be heard at this term, and, upon consideration thereof, it is ordered, adjudged and decreed that the bill be dismissed, each party to pay half the costs. The prothonotary will enter this decree "*nisi*," and give notice of same to the parties or their counsel, and if no exceptions are filed within ten days, this decree shall be entered by him as a final decree.                     From Henry D. Maxwell, Easton, Pa.