## Four Brooks Reformed Episcopal Bible Conference Tax Exemption Case

*C. William Freed, Jr.,* for appellant.

*Samuel S. Gray, Jr.,* for appellee.

FULLAM, J., May 3, 1966.—By a nisi order entered June 18, 1965, the undersigned, as hearing judge, dismissed appellant's claim that the board of assessment and revision of taxes erred in failing to exempt from taxation all of appellant's property in Tinicum Township. Pursuant to procedural arrangements agreed upon by counsel at the time, appellant has filed exceptions to this order and to certain findings and conclusions of the hearing judge, thus bringing the matter before the court en banc for final disposition.

The board granted exemption as to certain parts of the property, somewhat generously defined, on the basis that these constituted "actual places of religious worship", but refused to exempt the balance of the property, devoted to recreational areas and living quarters for campers attending the various summer Bible conferences conducted by appellant. The portions of the premises considered taxable include 55 acres of woodland, available for use by campers for nature study, hiking, etc.; a hobby shop where campers may purchase raw materials and fabricate various articles by hand; a gift shop, where souvenirs, post cards and religious materials are sold to the participants in the program; and a swimming pool and other recreational facilities.

It is appellant's position that the entire property is devoted to charitable use, namely, the furnishing of healthful outdoor recreation and religious training and instruction to young people.

We recognize that some of the early decisions of our

appellate courts, following adoption of our present constitution in 1874, contain dicta, broadly expressed, to the effect that the dissemination of the Christian religion constitutes a work of benevolence or charity. E.g., see American Sunday School Union v. City of Philadelphia, 161 Pa. 307 (1894); Board of Home Missions and Church Extension of the Methodist Episcopal Church v. Philadelphia, 266 Pa. 405 (1920). In West Indies Mission Appeal, 387 Pa. 534 (1957), exemption was granted to a nonprofit corporation "dedicated to training and sending out missionaries to the West Indies, some one hundred and eighty of whom are currently providing medical services, broadcasting religious programs and otherwise performing the manifold functions associated with missionary work", with respect to property being used "to house the headquarters of the organization, indoctrinate new missionaries, house families of missionaries in the field, house missionaries themselves who are home on rehabilitative leave, hold conventions and meetings of those interested in the Mission's work . . ." And in Episcopal Academy v. Philadelphia, 150 Pa. 565 (1892), exemption was conferred upon what the court stated "may be fairly considered a denominational school".

But we are not aware of any case which has actually held that religious instruction in the tenets of a particular sect can properly be considered as "purely public charity". In the West Indies case, supra, it was pointed out that the organization was supported by groups representing various religious denominations; and it is apparent that the missionary activities carried out by the trainees included in large measure nonsectarian good works such as schools, hospitals and other medical programs in underprivileged areas. The Episcopal Academy case obviously involved a school which provided the usual academic instruction, albeit with denominational overtones.

The Board of Home Missions and Church Extension of the Methodist Episcopal Church v. Philadelphia case, supra, comes closest to upholding exemption of property devoted to strictly sectarian religious work. Even here, however, the opinion of the appellate court stresses the lower court finding that the building in question was " 'the headquarters of the Home Mission work of the Methodist Episcopal Church in America' "; that " 'all funds are sent to this office from churches throughout the denomination, and from individuals, without any discrimination being had as to their religious affiliations' "; and that the money was used " 'for the building of churches . . . and in supplementing the salaries of missionaries throughout America, such buildings not being limited in their attendance to members of the Methodist faith, but open to all persons' ". Moreover, there is reason to question whether our appellate courts today would approve of some of the sweeping language in the opinion in the cited case, in view of our increasing awareness of delicate constitutional issues in the church-State area. Needless to say, no such constitutional issues were presented or considered by the court in the cited case.

It should be noted that even with respect to non-religious activities which are invariably thought of as charitable in nature, such as providing food, clothing and shelter for elderly indigents, tax exemption has been refused whenever it appeared that, as a practical matter and irrespective of charter provisions, the recipients of the charitable benefits were limited to members of a certain religious denomination or fraternal organization: Philadelphia v. Masonic Home of Penna., 160 Pa. 572 (1894). Exemption is also denied where the charter of an institution limits the beneficiaries to members of a certain religious sect, or those in sympathy with such religious sect, notwithstanding the fact that in actual operation the charter provisions are

disregarded and no such test for eligibility is in fact applied: Friends' Boarding Home of Bucks Quarterly Meeting v. County Commissioners of Bucks County, 80 Pa. Superior Ct. 475 (1923). But it is acceptable to discriminate in favor of members of a certain denomination or other category either as to payment terms or priority of admissions, so long as it does not appear that there is a policy of exclusion of the indefinite members of the general public: The Burd Orphan Asylum v. The School District of Upper Darby, 90 Pa. 21 (1879).

Applying all of the foregoing principles to the instant case, we are not convinced that, even if the entire property were used directly and exclusively for appellant's religious purposes, exemption would be appropriate, except, of course, as to those areas qualifying as actual places of religious worship. The activities of appellant differ substantially from those of the taxpayer in Pittsburgh Bible Institute v. Board of Property Assessment, Appeals and Review, 405 Pa. 297 (1961).

But our decision becomes easier when we take into account the fact that the taxed areas are not used directly and exclusively for religious purposes as such, but rather for the convenience and well-being of those persons who attend the religious programs. It must be emphasized that this is not a "fresh air camp" for underprivileged slum children. The primary purpose of the entire establishment is religious instruction, and the camping and recreational aspects are provided in large measure to encourage attendance. The sum of $27.50 per week is paid for each child who attends the camp; and although the total revenues thus produced are not sufficient to meet all of the costs of the entire establishment, there is no suggestion that this weekly charge is not amply sufficient to cover the actual cost of lodging, meals and recreation.

In many ways, the present case resembles that of Pocono Pines Assembly and Summer Schools of Naomi Pines v. Monroe County, 29 Pa. Superior Ct. 36 (1905), where a somewhat similar religious and inspirational program for adults was established and carried on at a mountain vacation resort. It was there held that the residence facilities rented to participants were taxable. Admittedly, this case is not squarely controlling, since it was clear that the charitable organization was intentionally engaged in renting out vacation cabins for the purpose of obtaining revenue to support its programs, and that some of the tenants were not enrolled in the program. On the other hand, this commercial venture factor, weighing against exemption, was somewhat balanced in the cited case by the fact that the programs of the charitable organization were more broadly educational and cultural, and less clearly denominational and sectarian, than in the present case. In any event, it would seem that there is justification in the cited case for holding that those portions of the premises which are used for activities ancillary to, and supportive of, the charitable purpose are not exempt, unless the ancillary activities themselves are charitable in nature.

In short, we are persuaded that the board of assessment and the hearing judge were correct in holding that appellant has not established its right to exemption of the entire property. The camping and recreational aspects of appellant's program, while no doubt generally beneficial, have not been shown to constitute a public charity in this context. Compare Mount Vernon Hebrew Camps, Incorporated v. Wayne County Commissioners, 201 Pa. Superior Ct. 5 (1963).

In view of the conclusions set forth above, it is unnecessary to consider whether the fact that appellant's use of the premises is restricted to the relatively brief period of 10 weeks each summer would be sufficient to characterize the property for tax exemption purposes.

ORDER

And now, May 3, 1966, for the reasons set forth in the foregoing opinion, appellant's exceptions are dismissed, and the order heretofore entered on June 18, 1965, is made final.