## Appeal of the Congregation of Sisters of Sts. Cyril and Methodius.

*Taxation—Exemption—Charity—School—Religious instruction.*

The real estate of a convent used as a school is not exempt from taxation, where it appears that the Roman Catholic faith was taught to all persons therein, including postulants, novices and day students; that the Roman Catholic Bible was used; that no other religious training was given; that no one was selected as a teacher unless she was of that religious faith; and that persons of that faith were preferred as trustees and directors of the institution.

Appeal from tax assessment. C. P. Montour Co., Oct. T., 1922, No. 3.

*Thomas C. Welsh* and *David J. Reedy*, for appellants.

*A. W. Duy* and *Ralph Kisner*, for appellees.

POTTER, P. J., specially presiding, Sept. 12, 1922.—This is an appeal by "The Congregation of Sisters of Sts. Cyril and Methodius" from the decision of the Board of the Revision of Montour County, in their refusal to exempt from taxation certain real estate owned and occupied by the appellants, the same being assessed as follows:

"On 22½ acres of land used as a place of religious worship, burial ground, an academy and institution of learning, with grounds thereto annexed and necessary for the enjoyment of the academy, $42,000.

"On 10½ acres, as used for an ice pond, &c., $3150."

Various reasons have been assigned why this exemption should be allowed, but all appear to have been abandoned except the following one, which alone is considered in this opinion: "Whether or not 'The Congregation of the Sisters of Sts. Cyril and Methodius' is a purely public charity or institution of learning, founded, endowed and maintained by public or private charity, within the meaning of the Constitution and the Laws of this State so as to be exempt from Taxation."

The determination of this question must rest upon the testimony produced at the hearing held July 25, 1922.

No testimony was offered by the appellees.

The testimony of the appellants, in substance, is as follows: On the twenty-two and one-half acres of land is erected a convent, certain parts of which are used as a chapel, and a school under the ownership and control of a much-respected religious denomination. An ice pond of ten and one-half acres is also owned and controlled by the appellants, the ice from which is chiefly consumed by the appellants, and the funds arising from the sale of a small portion of the ice crop, not needed by them, are used towards the maintenance of the convent, school, &c. A small part of the twenty-two and one-half acres is used as a burial ground for deceased sisters, and parts of it as places of recreation. The institution is maintained by gratuitous contributions almost entirely, small amounts being derived from the sale of ice and from small fees paid by postulants and novices who are able to pay. That this institution was opened a few years ago and is duly incorporated under the laws of this Commonwealth. It is intended as a normal school for postulants and novices. Since 1918 seventy-one postulants and novices have been admitted. At present there are twenty novices and ten postulants, the balance of the seventy-one having become members of the society, some of whom have gone out to teach in the parochial schools of the Roman Catholic Church. During the past year nineteen children, ranging in age from five to fourteen years, have been

instructed in the school; seventeen of whom contributed towards their education. This is a Slovak school and has been so up to the present time. That the vow taken after two years of education is an allegiance to the Roman Catholic Church, and the order the novice enters upon taking the vow is under the surveillance and domination of the Roman Catholic Church. That many children are admitted to the day school. Novices and postulants must have the training and education of the Roman Catholic Church. The children in the day school are taught the catechism and are required to attend services in the chapel. They are not required to attend mass every morning, but all are expected to attend unless prevented by sickness or other reasons equally as good. They are required to study the Bible of the Roman Catholic Church. The children are not compelled to study the tenets of the Roman Catholic faith. The prayer-books used are of the Roman Catholic faith, and the students receive no other religious training. A teacher in the institution must be of the Roman Catholic religion. No discrimination is made in the day scholars as to religious faith.

The question, as we see it, is narrowed down to whether or not this school is denominational and sectarian, or is it open to all, regardless of religious faith, and whether or not it is confined to religious instruction in any one particular belief.

## Discussion.

A claimant from exemption from taxation must show affirmative legislation in support of the claim, and the case must come clearly within it. The Constitution exempts nothing; it merely permits the legislature to exempt within the lines laid down for its guidance. So that, in order to claim exemption, the appellant must produce legislation to that end. We have numerous acts of assembly along that line down to 1921, the latter act being an amendment to the Act of 1919, and if exemption is to be allowed, it must be under and by virtue of these acts. We fail to see how the Amendment of 1921, P. L. 119, or any of the other acts help the situation in any degree. So far as the question involved in this appeal is concerned, the law stands now as it has stood for many years. If this institution is non-sectarian, is open to all, regardless of religious faith, requires no distinctive religious belief as a prerequisite to admission as a student or employment of a teacher, and requires no sectarian creed or doctrine to be taught, then clearly it would be entitled to the exemption it asks for: Northampton County v. Lafayette College, 128 Pa. 132; Donohugh's Appeal, 86 Pa. 306; Beaver County v. Geneva College, 2 Dist. R. 70; Thiel College v. Mercer County, 101 Pa. 530.

In the case at bar the Roman Catholic faith is taught to all, this including postulants, novices and day students in the school.

And even a voluntary association with some particular society creates a distinction which does not concern the public at large, and does not permit of an allowance of exemption: Philadelphia v. Masonic Home, 160 Pa. 572.

The Roman Catholic Bible is taught. The children in the day school are expected to attend services in the chapel. No one is selected as a teacher unless she is of this religious faith, and the trustees and directors of the institution of this faith are preferred. This institution has been, and now is, a Slovak school. Postulants and novices must be of the Roman Catholic belief. Only the Roman Catholic Bible is used, and no other religious training is taught.

At first thought it might seem to the casual observer that this institution comes within the law entitling it to exemption, but a close reading of the tes-

2 D. & C.

timony produced, especially that brought out on cross-examination, points very strongly the other way.

We feel constrained to say that we favor education in all its many forms and branches. We favor religious training of all denominations tending towards the uplift of humanity. Speaking our own sentiments, we would willingly decree exemption to this institution did the law, in our opinion, warrant it. But on a careful reading of the acts of assembly and the decisions of the appellate courts relative thereto, we fail to see how the exemption can be granted, and the appeal is, therefore, dismissed.

There is no evidence whatever in this case as to the respective values of the different tracts of land going to make up the twenty-two and one-half acres, relative to burial grounds, recreative grounds, &c., therefore it is impossible to decree whether or not at least a part of this tract, or what parts of it, might be exempt.

And now, to wit, Sept. 12, 1922, for the reasons given in this opinion, the appeal is dismissed.

From Charles P. Ulrich, Selins Grove, Pa.