Parmentier et al., Trustees', Appeal.

28

Argued October 12, 1939.

Before KELLER, P. J., CUNNINGHAM, STADTFELD, PARKER and RHODES, JJ.

*Walter B. Gibbons,* for appellants.

*Howard E. Stern,* with him *Michael D. Hayes,* Assistant City Solicitors, for appellee.

OPINION BY KELLER, P. J., March 2, 1940:

This is an appeal by an institution of purely public charity from the order or decree of the court of common pleas dismissing its appeal from the Board of Revision of Taxes, which refused to grant it exemption from taxation for the year 1928 on its property 1242 South Broad Street, Philadelphia.

The court below found that the Canonesses of St. Augustine were engaged in purely public charitable work, such as to entitle their building to exemption from taxation if the whole of it had been devoted to such charitable work, but because part of the building was used by the Canonesses—who carried on the charitable work freely and without any pay or compensation —for living and sleeping quarters, it held, by analogy to the case of a parsonage or rectory in connection with a place of religious worship, that such quarters were not exempt from taxation; and as the appellants presented no evidence as to the relative values of the exempt and non-exempt portions of the building, the appeal had to be dismissed.

The error of the court below was in applying to an institution of purely public charity the decisions applicable to "places of public worship." They are not governed by identical provisions in the Constitution or the statutes, nor by the same decisions of our courts.

It is well settled that a rectory or parsonage supplied by a church for the residence of its priest or minister is not exempt from taxation: *Phila. v. St. Elizabeth's Church,* 45 Pa. Superior Ct. 363; but this is because the constitution in authorizing the General Assembly to exempt places of religious worship from taxation limited the exemption to "actual places of religious worship", while in authorizing the exemption of *charitable,* as distinguished from *religious,* institutions it said merely "and institutions of purely public charity," (Art. IX, sec. 1[1]); and the statutes carrying this provision of the Constitution into effect,

---

[1] "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity."

have uniformly observed the distinction. Thus the Act of May 14, 1874, P. L. 158 provided, "That all churches, meeting houses, or other regular places of stated worship, with the grounds thereto annexed necessary for the occupancy and enjoyment of the same; ...... all hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, found, [founded?] endowed and maintained by public or private charity; ...... be and the same are hereby exempted from all and every county, city, borough, bounty, road, school and poor tax: *Provided,* That all property, real or personal, other than that which is in actual use and occupation for the purposes aforesaid, and from which any income or revenue is derived, shall be subject to taxation, except where exempted by law for state purposes, and nothing herein contained shall exempt same therefrom." The same distinction has been consistently maintained in the Acts of July 17, 1919, P. L. 1021, April 9, 1921, P. L. 119, March 17, 1925, P. L. 39, and April 30, 1925, P. L. 388—and is now in the codified Act of May 22, 1933, P. L. 853 (see Sec. 204)— with only the proviso following the clause relating to "hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity," added in 1921, "That the entire revenue derived by the same be applied to the support of and to increase the efficiency and facilities thereof, the repairs and the necessary increase of grounds and buildings thereof, and for no other purposes."

In construing the exemption relating to places of religious worship, we pointed out in *Phila. v. St. Elizabeth's Church,* supra, p. 367, that "the clergy house is not an actual place of religious worship. It is a residential place. The church adjoining is the place of religious worship. It is a strange use of language to

say that a dwelling house, with basement, kitchen, dining room, bath rooms and sleeping rooms, actually occupied by a family as their residence, is an actual place of religious worship. In *Mullen v. Commissioners of Erie Co.*, 85 Pa. 288, Chief Justice AGNEW discusses the constitutional provision thus: 'And not content with a single qualifying expression, it prefixed the word actual—"an actual place of religious worship". Without religious worship held in it, the place has no character. The convention did not mean to exempt a place merely; for this would be unmeaning, without something to characterize the place. But when that body said, "An actual place of religious worship," it expressed a general thought, which would embrace all kinds of buildings by simply defining the use, which was to be the ground of exemption.' ...... The learned judge then discusses the Act of May 14, 1874, passed to carry out the exemption clause in the constitution, and he says: 'Thus the title says, "places of religious worship"; and the text says, "all churches, meeting-houses, or other regular places of stated worship." They must be places of stated worship. The word stated means fixed, established, occurring at regular times, as, stated hours of business. So, statedly means at certain times, not occasionally. But the legislature was not content with the word "stated", and the word "regular" was prefixed, and the sentence became, "regular places of stated worship". It would be hard to find language that more clearly defines the use, which is the ground of the exemption.' "

There is no such qualification in respect to the expression in the constitution, "institutions of purely public charity", nor in the clause in the various acts of assembly defining and carrying it into effect, to wit, "all hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, with the grounds thereto annexed and

necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity; Provided, That the entire revenue derived by the same be applied to the support of and to increase the efficiency and facilities thereof, the repairs and the necessary increase of grounds and buildings thereof and for no other purpose." Of course, this proviso does not exempt from taxation real estate which has been rented out for commercial purposes or devoted to ordinary business activities, for the purpose of securing revenue, even though that revenue so derived is applied to the general work of the educational or charitable institution. See the full discussion on the subject by Mr. Justice MAXEY in *Y. M. C. A. of Germantown v. Phila.*, 323 Pa. 401, 187 A. 204, where certain activities, though helpful in the work of the plaintiff, were held not to be a *necessary* part of the charitable and benevolent work carried on by it. See also, *American Sunday School Union v. Phila.*, 161 Pa. 307, 29 A. 26, and kindred cases. They are governed by the proviso at the end of the Act of 1874, supra.[2] But the construction placed on the Acts of 1874 and 1919, supra, even before the clarifying proviso of 1921, supra, was such as to justify the exemption of hospitals, even though rooms were devoted to the care of pay patients, and *board and lodging* were furnished to *attendants, internes and nurses,* either in the *hospital itself* or in *convenient quarters and nurses homes: Penna. Hospital v. Delaware County,* 169 Pa. 305, 308, 32 A. 456; *Phila. v. Penna. Hospital for the Insane,* 154 Pa. 9, 25 A. 1076; *Gable v. Sisters of St. Francis,* 227 Pa. 254, 75 A. 1087; In re *Appeal of Children's Hospital of Phila.,*

---

[2] *"Provided,* That all property, real or personal, other than that which is in actual use and occupation for the purposes aforesaid, and from which any income or revenue is derived, shall be subject to taxation, except where exempted by law for state purposes, and nothing herein contained shall exempt same therefrom."

82 Pa. Superior Ct. 196; *Episcopal Academy v. Phila.*, 150 Pa. 565, 575, 25 A. 55. Universities, colleges, academies, schools and institutions of learning *which come within the statutory classification,* are held exempt from taxation, even though students pay tuition and are charged for board in "commons" or dining rooms run by the institution, and for lodging in dormitories; and this exemption extends not only to quarters used for employees and for dormitories and dining halls used for the students but also to buildings owned by the institution and used by it to house the president and faculty. See *White v. Smith,* 189 Pa. 222, 42 A. 125 [teachers lived in convent building, which was held exempt]; *Northampton County v. Lafayette College,* 128 Pa. 132, 18 A. 516; *Dickinson College v. Cumberland County Commrs.,* 12 C. C. Rep. 582, 586, cited by the Supreme Court in *Barnes Foundation v. Keely,* 314 Pa. 112, 171 A. 267; *Haverford College v. Rhoads,* 6 Pa. Superior Ct. 71 [including dining room, kitchen, quarters for the employees, dormitories, etc., p. 85]; *Meadville City v. Allegheny College,* 131 Pa. Superior Ct. 343, 200 A. 105 [appeal refused, Ibid, XXXIII]; *Barnes Foundation v. Keely,* supra; *Episcopal Academy v. Phila.,* 150 Pa. 565, 25 A. 55; *National Farm School v. Commrs. of Bucks County,* 87 Pa. Superior Ct. 231; *Mercersburg College v. Mercersburg Boro.,* 53 Pa. Superior Ct. 388; *Phila. v. Trustees of University of Penna.,* 44 Pa. 360.

There is no justifiable reason why a like construction should not be given to other institutions of purely public charity, which require in connection with their work the help and assistance of a staff of attendants and workers, and it is deemed necessary or advisable in the conduct of such work to provide them or some of them with living and sleeping quarters, in buildings owned by the institution and used for no alien or commercial purposes, in order that they may be available to call at

34

all times; especially where, as in this case, the workers contribute their services gratis and receive nothing from the charitable institution but their board and lodging. And such has been the ruling of our appellate courts. See, inter alia; *Woman's Home Missionary Soc. v. Receiver of Taxes,* 173 Pa. 456, 34 A. 42 [almost on all fours with this case]; *House of Refuge v. Smith,* 140 Pa. 387, 21 A. 353 [very similar to this case]; *Phila. v. Women's Christian Assn.,* 125 Pa. 572, 581, 17 A. 475 [including dining room and dormitories]; *Donohugh's App.,* 86 Pa. 306 [see MITCHELL, J. on "Purely Public Charity"] *Burd Orphan Asylum v. School Dist. of Upper Darby,* 90 Pa. 21; *United Presbyterian Women's Assn. v. County of Butler,* 110 Pa. Superior Ct. 116, 167 A. 389, [where certain "dwellings were occupied by the help," p. 120]; *County of Lancaster v. Y. W. C. A. of Lancaster,* 92 Pa. Superior Ct. 514 [a summer home and camp]; *Daly's Est.,* 208 Pa. 58, 61, 57 A. 180; *Fire Ins. Patrol v. Boyd,* 120 Pa. 624, 646-7, 15 A. 552.

Nor is the exemption affected by the fact that the buildings of the institution may be separated, provided they are used together as a unit in the charitable work of the institution: *House of Refuge v. Smith,* supra, p. 395; *Penna. Hospital v. Delaware County,* supra, p. 308; *National Farm School v. Commrs. of Bucks County,* supra; *County of Lancaster v. Y. W. C. A. of Lancaster,* supra; *Barnes Foundation v. Keely,* supra.

There is consequently no just ground for applying to this charitable institution the narrow and limited exemption prescribed for 'actual places of public worship', on which the court below chiefly relied.

The court below found, inter alia, the following facts:

"1.  On January 26, 1927, by Deed from one Anna McGovern, Flore Philomene Parmentier and Antoinette Helene Coussee, became the registered owners of premises 1242 South Broad Street, in the City of Philadelphia, as more particularly described in paragraph 1 of the Petition.

"2.   By Declaration of Trust dated March 28, 1927, Flore Philomene Parmentier and Antoinette Helene Coussee declared that the purchase price paid for the said property was the proper money of the religious community of The Missionary Canonesses of St. Augustine, and that they, the said Flore Philomene Parmentier and Antoinette Helene Coussee, upon request of said community would convey said property to such persons or corporation as should be named by said Missionary Canonesses of St. Augustine. Said Deed of Trust was never recorded.

"3.   Said premises were assessed for taxation purposes for the year 1928 in the name of the registered owners thereof, to wit, Flore Philomene Parmentier and Antoinette Helene Coussee.

"4.   The Missionary Canonesses of St. Augustine was incorporated as a non profit corporation on April 13, 1934, and subsequently Flore Philomene Parmentier and Antoinette Helene Coussee conveyed said premises to said corporation.

"5.   The purposes of the corporation, The Missionary Canonesses of St. Augustine, is the rendering of social service work and nursing and assisting the poor and distressed in their homes, etc.

"6.   During the year 1928, and at all times when title was in the names of Flore Philomene Parmentier and Antoinette Helene Coussee, said premises were occupied and used by a group of sisters associated under the name, The Missionary Canonesses of St. Augustine, and said Flore Philomene Parmentier and Antoinette Helene Coussee held title as trustees for said Missionary Canonesses of St. Augustine.

"7.   Said premises are in St. Rita's parish of the Roman Catholic Church, and during the year 1928 and all subsequent years, the pastor of said parish used said Missionary Canonesses of St. Augustine in the parish work of caring for the poor and needy, and in other charitable work.

"8.  The property in question consists of a three story house.  On the first floor there are two reception rooms, a dining room, a kitchen and a pantry.  On the second floor is a community room, an office, a chapel and a bathroom.  On the third floor there are four sleeping rooms and a bathroom.

"9.  The Missionary Canonesses of St. Augustine, apparently five in number, devote all of their time to the charitable work of St. Rita's Church and of the surrounding neighborhood.  They receive no compensation for their services, but the pastor of St. Rita's Church makes a monthly contribution of $150 which is used for the upkeep of premises 1242 South Broad Street, and the maintenance of the Canonesses therein.

"10.  The Canonesses conduct classes for children for the teaching of handicraft, sewing, singing and other kinds of music.  They conduct a summer school where children are taught handicraft and sewing.  They distribute aid to the needy in the neighborhood, and in general perform charitable work in said community.

"11.  Many of the activities of the Canonesses are conducted at premises 1242 South Broad Street, but some of them, apparently where large numbers of persons are involved, are conducted at the parish headquarters at 1166 South Broad Street.

"12.  Two rooms on the first floor of said premises [1242 South Broad Street] and all of the second floor are devoted to the charitable work of the Canonesses. The entire third floor and the dining room and kitchen on the first floor are used solely as living quarters for said Canonesses."

It thus appears that no part of the building is devoted to any purpose but the charitable work of the institution and the living quarters of the Canonesses, who devote all their time to this charitable work, freely and without compensation. No part of the building is rented out and no income or revenue of any kind is

derived from it. The aid given the poor is non-sectarian. It follows that under the authorities above cited the entire building was exempt and the court below should have so decreed: *Woman's Home Missionary Society v. Receiver of Taxes,* 173 Pa. 456, 34 A. 42.

The decree is reversed and the record is remitted to the court below with directions to enter a decree sustaining the appeal and holding the building 1242 South Broad Street, Philadelphia, as owned and conducted by the Canonesses of St. Augustine, exempt from taxation as an institution of purely public charity. Costs to be paid by appellees.