## Dougherty, Appellant, *v.* Philadelphia et al.

Argued October 12, 1939.

 Be-
fore KELLER, P. J., CUNNINGHAM, STADTFELD, PARKER
and RHODES, JJ. 

*Walter B. Gibbons,* for appellant.

*Howard E. Stern,* with him *Michael D. Hayes,* Assistant City Solicitors, *Joseph Sharfsin,* City Solicitor, and *Robert von Moschzisker,* for appellees.

OPINION BY KELLER, P. J., March 2, 1940:

This is a companion case to *Parmentier et al., Trustees', Appeal,* 139 Pa. Superior Ct. 27, 11 A. 2d 690, and is governed by the same principles. The main difference between them is procedural, in that in that case, the property owner appealed from the order of the Board of Revision of Taxes, while in this case a bill in equity was filed to restrain collection of the tax. Complete exemption was claimed in both cases. In accordance with our action in the companion case, the decree of the court below will be reversed.

The appellant, as Cardinal Archbishop of the Roman Catholic Diocese of Philadelphia has under his supervision and direction all of the charitable work of the diocese. In this capacity he acquired title to premises 1929 Wallace Street, Philadelphia, on which is erected a four story building. Title to this property is held

solely by the appellant for the prosecution of the chari-
table work of the diocese, and is used in connection with
the work of the Catholic Children's Bureau.

The Catholic Children's Bureau is a corporation of
the first class, devoted to the care and protection of
dependent, neglected and wayward children and is an
institution of purely public charity. The court below
properly so found (p. 47a). It has its headquarters at
1706 Summer Street, where it maintains its general
offices, which premises are entirely exempt from taxa-
tion. The work of the Bureau is supported by funds
supplied by the Diocese of Philadelphia, the annual
appropriation being $50,000. Ten of the forty persons,
who do the work of the Bureau are paid, lay employees.
The remaining thirty are members of the Missionary
Servants of the Most Blessed Trinity, a religious sister-
hood, who receive no compensation for their services.
These thirty sisters have resided at 1929 Wallace Street
continuously since October 1, 1924, together with five
sisters who do the domestic work. The costs incident
to the upkeep of the premises and the maintenance of
the sisters therein are supplied by the Diocese of Phila-
delphia. On the first floor of the premises 1929 Wallace
Street are three reception rooms, an office, a dining
room, a kitchen and a pantry. One-third of the second
floor is devoted to a chapel, where daily mass is said
for the resident sisters, and the rest is used for sleeping
quarters for the sisters. The third and fourth floors
are used exclusively for sleeping quarters of the sisters
engaged in the work of the Catholic Children's Bureau.
Not one cent of income or revenue is derived from the
building. The rooms on the first floor, other than din-
ing room, kitchen and pantry, are used for the reception
of persons calling to see the sisters on the work and
business of the Bureau when the offices at 1706 Summer
Street are closed. The office hours of the Bureau at
1706 Summer Street are from 9:00 o'clock A. M. to 5:00

o'clock P. M. on week days, except Saturdays, when it closes at 1:00 o'clock P. M. Many working people cannot come to 1706 Summer Street during business hours and therefore come to see the sisters on work of the Bureau at 1929 Wallace Street, before or after office hours. The lay apostolates, young women who do volunteer work for the Bureau in the evenings and who are employed during the day elsewhere, come to 1929 Wallace Street for appointments and make their reports there.

The Catholic Children's Bureau has under its supervision over 4600 children, Catholic and non-Catholic, white and colored, many of them placed there by order of the courts of Philadelphia and eleven other counties. About 2100 of these children are in institutions and 2500 in private homes, placed there through the Bureau. The purpose of the corporation, as declared in its charter is "to found, institute, maintain and conduct a society or association for the care and protection of dependent, neglected and wayward children, to furnish them with temporary refuge and shelter, to supply them with food, clothing, medical attendance and other necessaries; to procure suitable homes for them with families, schools or institutions; and generally to safeguard, advance and promote their physical, moral and material welfare." The thirty sisters who reside at 1929 Wallace Street devote their whole time to the work of the Bureau which includes, *inter alia,* administrative or secretarial work at 1706 Summer Street, attendance at Juvenile Court, making visits to institutions and homes where children are placed and supervising the visits of lay assistants in such homes, and seeing them and other callers with reference to the work of the Bureau at 1929 Wallace Street.

The learned Chancellor and the court below recognized that the Catholic Children's Bureau is an institution of purely public charity, and that these sisters are

performing a most worthy and charitable work in connection with their work for the Bureau, but were of opinion that, as the building at 1929 Wallace Street is used chiefly as living quarters for these sisters, by analogy to the rule which refuses exemption to the rectory or parsonage supplied by a church congregation to its priest or minister, who officiates in the church, exemption must also be denied in this case.

We have discussed somewhat fully in the companion case above referred to (Appeal of Flore Philomene Parmentier et al., Trustees) the reason why rectories and parsonages are not exempt from taxation—because they are not "actual places of worship" within the exempting constitutional provision (Art. IX, sec. 1) nor "places of religious worship" as expressed in the title of the Act of May 14, 1874, P. L. 158, carrying the constitutional exemption into effect, nor "churches, meeting houses or other regular places of stated worship," as exempted in the body of the Act; and pointed out that the constitutional and statutory provisions as to the exemption from taxation of "institutions of purely public charity" and "all hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity ...... founded, endowed and maintained by public or private charity," are not so limited or confined. We called attention to the rulings of our appellate courts, (1) that hospitals, founded and maintained by public or private charity are exempt from taxation even though, as is well known, some patients pay for their rooms and hospital service, and though board and lodging are furnished to attendants, internes and nurses, within the hospital or in convenient quarters and nurses homes: *Penna. Hospital v. Delaware County,* 169 Pa. 305, 308, 32 A. 456; *Phila. v. Penna. Hospital,* 154 Pa. 9, 25 A. 1076; *In re Appeal of Children's Hospital of Phila.,* 82 Pa. Superior Ct. 196; (2) that universities, colleges and other institu-

tions of learning, so founded and maintained, are likewise exempt from taxation, although their students may pay for tuition, boarding and lodging, and although their teachers may be housed in a college building, or buildings, and quarters may be maintained for employees, and dormitories and dining rooms for the students: *White v. Smith,* 189 Pa. 222, 42 A. 125; *Haverford College v. Rhoads,* 6 Pa. Superior Ct. 71; *Episcopal Academy v. Phila.,* 150 Pa. 565, 25 A. 55; *Northampton County v. Lafayette College,* 128 Pa. 132, 18 A. 516; (3) that other institutions of purely public charity (see *Donohugh's App.,* 86 Pa. 306, 312-314, 318; *Burd Orphan Asylum v. School Dist. of Upper Darby,* 90 Pa. 21, 34-36; *Fire Ins. Patrol v. Boyd,* 120 Pa. 624, 642-7, 15 A. 553), were held exempt as to (a) a home maintained for deaconesses of the Methodist Episcopal Church (*Woman's Home Missionary Society v. Receiver of Taxes,* 173 Pa. 456, 34 A. 42) where they performed duties (see p. 460) very similar to those of the sisters in this case; (b) an institution maintained for the reformation of juvenile delinquents, with shops, farm buildings, dormitories, etc. (*House of Refuge v. Smith,* 140 Pa. 387, 21 A. 353); (c) a home for orphans and friendless children, including a farm of 219 acres and "dwellings for the help" (*United Presbyterian Women's Assn. v. County of Butler,* 110 Pa. Superior Ct. 116, 120, 167 A. 389); (d) a summer home and camp for young women—with accommodations for the employees (*County of Lancaster v. Y. W. C. A. of Lancaster,* 92 Pa. Superior Ct. 514).

We pointed out that the exemption is not affected by the fact that the buildings used in the work of the institution may be separated, provided they are used together as a unit in the charitable work of the institution: *House of Refuge v. Smith,* supra, p. 395; *Penna. Hospital v. Delaware County,* supra, p. 308; *County of Lancaster v. Y. W. C. A. of Lancaster,* supra; *Barnes*

*Foundation v. Keely,* 314 Pa. 112, 171 A. 267. And the charitable institution does not lose its privileges as a purely public charity because it may be organized and carried on by religious orders connected with a denomination: *Woman's Home Missionary Society v. Receiver of Taxes,* supra; *Gable v. Sisters of St. Francis,* 227 Pa. 254, 75 A. 1087; *Methodist Episcopal Church v. Phila.,* 266 Pa. 405, 109 A. 664. It is only as to *places of religious worship* that the exemption is confined to *churches, meeting-houses and other actual and regular places of stated worship.* This clause has no application to institutions of purely public charity sponsored and maintained by religious societies or denominations.

The Catholic Children's Bureau is admittedly a purely public charity. Its work is non-sectarian. It assists in relieving the state and county of the burden and responsibility of caring for dependent, neglected and wayward children and merits the appreciation of the government, state and county. The evidence in the case establishes the need for these sisters in the performance of the charitable objects and purposes of the Bureau and the necessity for this house, not only as an adjunct of the Bureau in its operation, but also as living quarters for those who perform the work of the Bureau without any pay or compensation, beyond their bare living.

The undisputed testimony in the record not only warranted the affirmance of the plaintiff's third, seventeenth and twenty-first requests for findings of fact and the defendants' second request for findings of fact, in addition to those findings of fact not excepted to, but did not sustain their refusal; there is no evidence in the record to support findings opposed to them.

As a consequence the chancellor also erred in refusing to adopt the first and second conclusions of law presented by plaintiff, based on the correct facts in the record, and in the second and third conclusions of law filed by him, as well as in the resulting decree nisi; and

the court below erred in dismissing plaintiff's exceptions to the above stated matters, and in entering the final decree.

The assignments of error are sustained. The decree is reversed and the record is remitted to the court below with directions to enter a decree in accordance with the prayer of the bill. Costs to be paid by appellees.