## Braddock Catholic Cemetery Company's Appeal

*Francis A. Wolf*, for appellant.

*N. K. Beck*, County Solicitor, and *J. M. Guffey*, Assistant County Solicitor, for Allegheny County.

SOFFEL, J., April 3, 1946.—The Board of Property Assessment, Appeals and Review of the County of Allegheny assessed the Braddock Catholic Cemetery Company, a corporation, for the triennial 1945-46-47 as follows:

5/10 acre land—Brinton Road. . . . $   25.00
2-story stone dwelling and office
    building, Brinton Road. . . . . . . . 4,000.00

Total. . . . . $4,025.00

The house in question is a very beautiful modern stone house. The basement is used as an office for the transaction of business of the cemetery. The second and third floors are occupied by the assistant superintendent, who pays no rent. The assessment in question represents 60 per cent of the total assessment, the county having exempted that part of the building which is used as an office. The house is erected within the cemetery grounds and constitutes a part of same.

The Braddock Catholic Cemetery Company has appealed from said assessment. The case is before the court on said appeal.

The Braddock Catholic Cemetery Company is a non-profit corporation, incorporated May 20, 1911, by the Court of Common Pleas of Allegheny County, Pa., at 130, July term, 1911. The articles of incorporation are recorded in the office of the Recorder of Deeds of Allegheny County, in Charter Book, vol. 46, page 162. The sole purpose of the corporation is the maintenance and perpetual upkeep of a public place for the burial of the dead. There is no capital stock. The charter provides that a sum equal to at least one tenth of the gross amount arising from the sale of lots shall be set apart for the perpetual care and preservation of the grounds, the repair and renovation of buildings. Thus it was apparently contemplated that the cemetery would have buildings. In pursuance of its purpose, the corporation in 1911 acquired a parcel of ground and subsequently added thereto three other parcels located in Braddock Township, Allegheny County, Pa. The whole consists of approximately 51 acres and is used as burial lots for the interment of the dead. In 1942 the corporation erected on the cemetery grounds the stone house which is the subject of the instant litigation, and provided in it space for offices and records in the first floor and basement and living quarters consisting of about six rooms on the upper floors to lodge the assistant superintendent.

Article IX, sec. 1, of the Constitution of 1874 as amended provides as follows:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, *actual* places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines." (Italics supplied.)

The General County Assessment Law of May 22, 1933, P. L. 853, sec. 204, as amended by the Act of May 3, 1943, P. L. 158, sec. 1, 72 PS §5020-204, relating to exemptions from taxation provides as follows:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: . . .

(b) All burial grounds and all mausoleums, vaults, crypts or structures intended to hold or contain the bodies of the dead, not used or held for private or corporate profit; . . ."

It is thus apparent that the legislature by adoption of the Constitution of 1874 and by its subsequent acts of assembly as here cited intended to exempt from taxation places of burial not used or held for private or corporate profit. The question for consideration here is whether this exemption applies to a building erected upon burial grounds, part of which is used for office purposes and part of which is used as living quarters for an assistant superintendent.

Counsel for the board of property assessment argues that (1) a claimant for exemption from taxation must bring himself clearly within the exemption statute: Wynnefield U. P. Church v. City of Philadelphia et al., 348 Pa. 252, 35 A. (2d) 276; (2) the exemption of "all

burial grounds" must be strictly and narrowly construed to comprehend only ground used for burial purposes; (3) by analogy, since a parsonage erected on church grounds is subject to taxation, a building erected upon cemetery grounds should be subject to taxation.

Counsel for the cemetery company contends that the building in question is a necessary part of the cemetery plant and is essential to its efficient and effective operation. The superintendent of the cemetery, Mr. Devlin, testified at the hearing that the managers of the corporation thought it essential to house the assistant superintendent on the premises. The reasons given were these:

1. To guard against vandalism, which is common in cemeteries;

2. To arrange for burials, which is often done after the office is closed, particularly when bodies are brought from out of town;

3. To sell lots, which is often done at hours other than those during which the offices are open;

4. To oversee the work of burying the dead and maintaining the grounds;

5. To keep available records to those entitled to inspect them;

6. To guard the equipment that is kept on the premises in other buildings, and to supervise labor generally.

In short, it was considered necessary by the management of the cemetery to keep someone in the cemetery all of the time for its efficient operation. The best means considered was to provide the assistant superintendent with living quarters on the premises. The office is open from 9 in the morning until 4:30 in the afternoon. Telephone calls after that are taken by the assistant superintendent. Mr. Devlin further testified that the assistant superintendent was paid on the basis of $7 per day; that he paid no rent.

It is thus apparent that the house in question does not bring in any revenue and produces no income for the corporation. It is therefore to be distinguished from property held for investment and not used directly for the purposes of operation.

In Pennsylvania Hospital v. Delaware County et al., 169 Pa. 305, 308, in determining what part of the property of a charity is exempt from taxation, the court said:

"On the general question of what part of the property of a charity is exempted from taxation a plain distinction is to be observed in all our cases. Property which is not used directly for the purposes and in the operation of the charity, but for profit, is not exempt, and the devotion of the profit to the support of the charity will not alter this result. Of this class of cases Am. Sunday School Union v. Phila., 161 Pa. 307, is the exemplar and authority. But property which is used directly for the purposes and in the operation of the charity is exempt, though it may also be used in a manner to yield some return and thereby reduce the expenses: Donohugh's App., 86 Pa. 306; Phila. v. Penna. Hospital, 154 Pa. 9; House of Refuge v. Smith, 140 Pa. 387."

In seeking to apply to the instant case the well-established principle of taxation that a rectory or parsonage attached to a church is not exempted, the board of assessment fails to take into account the language of article IX, sec. 1, of the Constitution of 1874, which specifically provides exemption for "*actual* places of religious worship." Because of the use of the word "actual" in the Constitution of 1874, the courts have consistently refused to exempt living quarters attached to a church because the living quarters of one connected with the carrying on of the work of the church cannot be considered an *actual* place of religious worship. This constitutional limitation, however, does

not occur in the language relating to places of burial, and in our judgment the analogy sought to be drawn is not a valid one. There is on the contrary an analogy to the exemption of public charities. The language applicable to charities and that relating to burial grounds omits the word "actual." As a result, living quarters connected with charities are held to be exempt from taxation.

In Parmentier et al., Trustees' Appeal, 139 Pa. Superior Ct. 27, 29, in overruling the action of the lower court in holding living quarters on property of a public charity to be subject to taxation, the late Judge Keller said:

"The error of the court below was in applying to an institution of purely public charity the decisions applicable to 'places of public worship.' They are not governed by identical provisions in the Constitution or the statutes, nor by the same decisions of our courts."

He points out in this case and in the companion case of Dougherty v. Philadelphia et al., 139 Pa. Superior Ct. 37, that a clergy house is really a residential place which cannot by any stretch of language be comprehended in the term "actual place of religious worship." However, there is no such qualification in the Constitution with respect to institutions of purely public charity, nor in the various acts of assembly carrying out these provisions. Thus a hospital, even though it takes in pay patients at an actual profit, is exempted. Philadelphia v. Penna. Hospital for the Insane, 154 Pa. 9.

A building used for living and sleeping quarters of a religious order wholly employed in the work of the order, without pay or compensation, is exempted: Parmentier's Appeal, supra. Also, a building occupied by an institution for the care and protection of dependent, neglected, and wayward children, a large part of which was used as a residence for those who carried on the work, was exempted. Dougherty v. Philadelphia, supra. The reasons behind these decisions are the fact

that the institutions in question are purely public charities. Therefore, the buildings used as living quarters for those directly concerned with the work of the given charity are exempted.

In White v. Smith, 189 Pa. 223, a convent building exclusively occupied by teachers of a school maintained by voluntary contributions, and which was erected on the school lot, was exempted from taxation as being part of the school property necessary for its efficient operation and management.

In Northampton County v. Lafayette College, 128 Pa. 132, it was sought to tax houses occupied by the professors and gardener which were built in the college enclosure in order to place the teachers in close relation with their pupils and lodge as many of them as possible in the dormitories occupied by students. The Supreme Court held that these buildings owned by the college, erected within its enclosure, whether filled with teachers or students, belong to and form part of the college and as part of the institution were protected from taxation.

In Meadville v. Allegheny College, 131 Pa. Superior Ct. 343, the residence of the president of the college owned by the college was held to be exempt from taxation even though the building was not on the campus or college grounds, it being considered necessary to the operation of the college. The president lived in this house rent free, this being an agreed part of his official compensation.

We are constrained to hold that the same reasoning applies to the building erected on the cemetery ground by the cemetery company, which building is essential to the operation and purposes for which the corporation was created. The language of the Constitution and of the statutes does not limit the exemption relating to burial grounds as it does those used for religious purposes. The only qualification to the general right

of exemption lies in the words "not used or held for private or corporate profit." As a residence for the president of a college or of the teachers of a school or of the workers of a child welfare project is rightly considered part of the institution, so the house occupied by the assistant superintendent in the instant case should be similarly construed, particularly since the testimony establishes that it is essential to have a man located on the grounds all of the time to guard against vandalism, to protect the machinery, and to do the chores which cannot be attended to when the office is closed.

The basic argument advanced by the board of assessment is that a building erected in a cemetery is not a part of a burial ground within the intent of the legislature in exempting from taxation burial grounds not held for profit. On at least three occasions the legislature has shown that it contemplated buildings as part of a cemetery or burial ground. Section 7 of the Act of March 11, 1850, P. L. 167, incorporating St. Mary's Cemetery, provides:

". . . the said cemetery ground and buildings be exempt from all taxation, except for state purposes."

While this was a special act and may be considered as an isolated instance, the same thing is repeated in the Act of March 18, 1909, P. L. 41, sec. 1, 15 PS §1091, providing for the setting up of a fund "for the perpetual care and preservation of the grounds, and the repair and renewal of the buildings and property of said burial or cemetery company." Also section 216, of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, 15 PS §2851-216, which provides that a certain part of the funds derived from the sale of lots of a cemetery incorporated under that statute "shall be set apart for the perpetual care and preservation of the grounds and the repair and renewal of the buildings and property of such company."

It is our conclusion that these acts and the exemption statute before the court are in pari materia insofar as their common subject matter, burial grounds, is concerned, and should be construed together. It is our conclusion that the part of the building and the land surrounding it here sought to be taxed are exempt from taxation. The appeal must therefore be sustained and the assessment as above set forth vacated.

*Opinion sur exceptions*

SOFFEL, J., June 25, 1947.—This case is before the court on exceptions filed by the Board of Property Assessment, Appeals and Review of the County of Allegheny, Pa., directed to the finding and order of court made by the trial judge in an opinion filed April 3, 1946, in which certain property belonging to the Braddock Catholic Cemetery Company was held to be exempt from taxation.

We are of the opinion that the exceptions should be dismissed and the case sustained upon the opinion and order of the trial judge filed April 8, 1946. To that opinion we would now add Union Dale Cemetery Company's Case, 227 Pa. 1. In that case an attempt was made to file a municipal lien for sewer improvement against the burial lots of the cemetery company. Mr. Justice Elkins there held that a general grant of power by the legislature to municipalities to assess the cost of authorized improvements against property benefited was not intended to make a departure from the fixed policy of the Commonwealth not to subject places of sepulture to lien, levy and sale. At page 5 of the opinion, Mr. Justice Elkin stated the general policy of the Commonwealth as follows:

"We cannot believe that a general grant of power by the legislature to municipalities to assess the cost of authorized improvements against properties benefited was intended to mark a departure from the fixed

policy of the commonwealth not to subject places of sepulture to lien, levy and sale. It is shocking to one's sense of the fitness of things to think of the consequences that may follow when a writ of execution seizes upon a cemetery set apart for the sole purpose of a burial ground and sale is made to a possible speculative purchaser. A decent regard for the memory of the dead and the feelings of the living demands that when such a'policy is adopted it should be in express language and by positive enactment."

We are of the opinion that this case buttresses and reënforces the order of court originally entered.

### *Order of court*

And now, to wit, June 25, 1947, exceptions ex parte Board of Property Assessment, Appeals and Review to the findings and order of court are dismissed.